UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CIVIL ACTION NO. 5:18-CV-171-TBR

BENJAMIN WALDEN,                                                              PLAINTIFF

v.

LYNN PRYOR,                                                                   DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court upon Defendant Lynn Pryor's Motion to Dismiss for Failure to State a Claim pursuant to Federal Rule of Civil Procedure 12(b)(6). [R. 4.] Plaintiff Benjamin Walden responded, [R. 6], and Pryor replied, [R. 9]. With the leave of the Court, Walden filed a Sur-reply. [R. 12.] Fully briefed, this matter is ripe for adjudication. For the reasons stated herein, Pryor's Motion to Dismiss, [R. 4], is **GRANTED IN PART AND DENIED IN PART**.

**BACKGROUND**

The factual allegations as set out in the Complaint, [R. 1-1], and taken as true are as follows.[1] On or about February 3, 2017, Pryor commenced a criminal action as a Commonwealth Attorney in Christian County, Kentucky against Walden for the following charges: 1st degree Sodomy; 1st Degree Rape; Assault 4th Degree, Minor Injury; Promoting Prostitution; Official Misconduct, 1st Degree; Terroristic Threatening, 3rd Degree; Intimidating a Participant in a Legal Process; Retaliating Against a Participant in a Legal Process; and Tampering with a

---

[1] *See Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) ("All factual allegations in the complaint must be presumed to be true, and reasonable inferences must be made in favor of the non-moving party.").

1

Witness. [R. 1-1 at 2-3.] Walden alleges that Pryor caused a warrant to be issued for Walden's arrest. [*Id.*]

Walden claims that Pryor interviewed the alleged victims and witnesses involved in the charges, including showing an alleged victim a photo of Walden for identification purposes. [*Id.* at 3.] Walden also claims that Pryor presented the charges to the Christian County Grand Jury before the Kentucky State Police concluded their investigation. [*Id.*]

On October 22, 2018, Walden filed a complaint in Christian Circuit Court against Pryor, in her individual and official capacity, asserting claims of malicious prosecution, "the tort of defamation and libel," the tort of outrage, and "for violation of 42 U.S.C. section 1983." [R. 1-1.] On November 13, 2018, Walden's complaint was removed to federal court. [R. 1.] Currently before the Court is Pryor's Motion to Dismiss for Failure to State a Claim. [R. 4.]

## LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to survive a motion to dismiss under Rule 12(b)(6), a party must "plead enough 'factual matter' to raise a 'plausible' inference of wrongdoing." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). When considering a Rule 12(b)(6) motion to dismiss, the Court must presume all of the factual allegations in the complaint are true and draw all reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc.*, 552 F.3d at 434 (citing *Great Lakes Steel*, 716 F.2d at 1105). "The court need not, however,

accept unwarranted factual inferences." *Id.* (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). Should the well-pleaded facts support no "more than the mere possibility of misconduct," then dismissal is warranted. *Iqbal*, 556 U.S at 679. The Court may grant a motion to dismiss "only if, after drawing all reasonable inferences from the allegations in the complaint in favor of the plaintiff, the complaint still fails to allege a plausible theory of relief." *Garceau v. City of Flint*, 572 F. App'x. 369, 371 (6th Cir. 2014) (citing *Iqbal*, 556 U.S. at 677–79).

## DISCUSSION

Walden asserts five claims against Pryor both in her official and individual capacities: malicious prosecution, "defamation and libel," tort of outrage, false imprisonment, and "violation of 42 U.S.C. section 1983." [R. 1-1 at 2; 7.] The Court will first address Walden's official capacity claims followed by the individual capacity claims.

### I. Official Capacity

As recited above, Walden asserts five claims against Pryor in her official capacity. In her Motion to Dismiss, Pryor argues that, as she was serving as a Commonwealth's Attorney at the time in question, she is immune from suit in her official capacity. Therefore, the claims against her in her official capacity should be dismissed under the doctrine of sovereign immunity. [R. 4-1 at 4-5.] Walden initially disputes this argument, but he appears to argue the issue of prosecutorial immunity in one's individual capacity instead of official capacity. [R. 6-1 at 3.] More explicitly, after noting that "a public officer sued in an official capacity is afforded the same immunity as the pertinent governmental entity," Walden goes on to explain the underlying rationale for absolute immunity in a prosecutor's individual capacity. [*Id.*] Although the Court

will address Walden's claims in relation to Pryor's individual capacity, the Court will first address the claims against Pryor in her official capacity.

"Official-capacity suits . . . 'generally represent [ ] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). Because Pryor is an officer of the Commonwealth of Kentucky, the claims brought against her in her official capacity are deemed a claim against the Commonwealth of Kentucky. *See Kentucky v. Graham*, 473 U.S. at 166. The Eastern District of Kentucky has put it in a slightly different way: "The Commonwealth's Attorney's office, which is a constitutionally-established office of the state government, is without question an integral extension of the state such that suit against the office 'may be legitimately classified as "brought against the Commonwealth."'" *Joseph v. Office of Perry Cty. Com. Attorney*, No. CIV.A. 6:14-97-KKC, 2014 WL 2742796, at *2 (E.D. Ky. June 16, 2014). Either way, the Supreme Court of Kentucky has held that "[i]t is an inherent attribute of a sovereign state that precludes the maintaining of any suit against the state unless the state has given its consent or otherwise waived its immunity." *Yanero v. Davis,* 65 S.W.3d 510, 517 (Ky. 2001). "Section 231 [of the Kentucky constitution] limits sovereign immunity to 'suits . . . against the Commonwealth.'" *Kentucky Cntr. for the Arts Corp. v. Berns,* 801 S.W.2d 327, 329 (Ky. 1990). Thus, the Commonwealth and the Commonwealth Attorney's Office are both shielded from suit unless the General Assembly has waived its immunity. Ky. Const. § 231. The Court is unaware of any act by the General Assembly waiving immunity in the present case, and the plaintiff has not indicated otherwise. Thus, the state law claims against Pryor in her official capacity are precluded under the doctrine of sovereign immunity.

Walden is also precluded from bringing a § 1983 claim. Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere. As such, it has two basic requirements: (1) the deprivation of federal statutory or constitutional rights by (2) a *person* acting under color of state law. *See West v. Atkins,* 487 U.S. 42, 48, (1988); *Flint v. Ky. Dep't of Corr.,* 270 F.3d 340, 351 (6th Cir. 2001). In *Will v. Mich. Dep't of State Police,* 491 U.S. 58 (1989), the Supreme Court held that "a State is not a person within the meaning of § 1983," *id.* at 64, and applied that holding to "governmental entities that are considered 'arms of the State.'" *Id.* at 70; *Jordan v. Kentucky,* Civil Action No. 3:09CV–424–M, 2009 WL 2163113, at *4 (W.D. Ky. July 16, 2009) (finding Commonwealth's Attorney's Office is not a "person" subject to suit under § 1983); *York v. Warren County Commonwealth Attorney's Office,* No. 1:08CV–P16–R, 2008 WL 339505, at *2 (W.D. Ky. Feb. 6, 2008) ("[T]he Warren County Commonwealth Attorney's Office is not a 'person' under the Act."). Because neither the Commonwealth of Kentucky nor the Commonwealth's Attorney's Office is a "person" subject to suit under § 1983, the § 1983 claim must be dismissed for failure to state a claim upon which relief may be granted.

Alternatively, under the Eleventh Amendment to the U.S. Constitution, a state and its agencies may not be sued in federal court, regardless of the relief sought, unless the state has waived its immunity or Congress has overridden it. *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 146 (1993); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 124 (1984); *Alabama v. Pugh,* 438 U.S. 78l, 782 (1978). The Commonwealth of Kentucky has not waived its immunity, *Adams v. Morris,* 90 F. App'x 856, 857 (6th Cir. 2004), and in enacting § 1983, Congress did not intend to override the traditional sovereign immunity of the states. *Whittington v. Milby,* 928 F.2d 188 (6th Cir. 1991) (citing *Quern v. Jordan,* 440 U.S.

332 (1979)). Thus, the Eleventh Amendment further bars a § 1983 action against the Commonwealth of Kentucky and the Commonwealth's Attorney's Office. *See York,* 2008 WL 339505 at *2 ("[T]he Eleventh Amendment acts as a bar to all claims for relief against the Warren County Commonwealth Attorney's Office."); *Ferritto v. Ohio Dep't of Highway Safety,* No. 90–3475, 1991 WL 37824, at * 2 (6th Cir. Mar.19, 1991) ("The Eleventh Amendment prohibits actions against states and state agencies under section 1983 and section 1985.").

In sum, Pryor's Motion to Dismiss as it pertains to Walden's claims against Pryor in her official capacity is GRANTED.

## II. Individual Capacity

### A. Federal Claim

Pursuant to federal law, Walden's complaint alleges a "violation of 42 U.S.C. section 1983." While Walden does not specify what constitutional right was violated by Pryor, he asserts a claim for malicious prosecution, which the Sixth Circuit recognizes as a "separate constitutionally cognizable claim" under the Fourth Amendment that encompasses "wrongful investigation, prosecution, conviction, and incarceration." *Robertson v. Lucas*, 753 F.3d 606, 616 (6th Cir. 2014) (quoting *Sykes v. Anderson,* 625 F.3d 294, 308 (6th Cir. 2010)). In support of his claim that Pryor "maliciously and with no probable cause commenced the above described criminal action against Plaintiff," Walden alleges two actions taken by Pryor. First, Walden claims that Pryor "acted outside the scope of her duties as a Prosecutor and acted as an investigator when she interviewed the alleged victims and witnesses," including "showing the alleged victim the Facebook photo of the Plaintiff for identification." [R. 1-1 at 3.] Second, Walden alleges that Pryor "maliciously and with no probable cause presented said charges to the Christian County Grand Jury prior to the Kentucky State Police concluding their investigation."

6

[*Id.*] In her Motion to Dismiss, Pryor argues that the claims alleged against her in her individual capacity should be dismissed pursuant to both absolute prosecutorial immunity and qualified immunity.

1. **Absolute Prosecutorial Immunity**

The Sixth Circuit recently provided a concise explanation of absolute immunity in *Hall v. City of Williamsburg*:

> "An absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity." *Imbler v. Pachtman*, 424 U.S. 409, 419 n.13, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). Absolutely protected acts include those "undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State . . . ." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). We have employed a "functional approach" to determine whether a prosecutor is entitled to absolute immunity, looking to "the nature of the function performed, not the identity of the actor who performed it" when assessing whether conduct is prosecutorial, and thus absolutely protected. *Id.* at 269, 113 S.Ct. 2606 (citation omitted).
>
> Absolute immunity protects "only . . . actions that are connected with the prosecutor's role in judicial proceedings, not . . . every litigation-inducing conduct." *Adams v. Hanson*, 656 F.3d 397, 402 (6th Cir. 2011) (alteration in original) (quoting *Burns v. Reed*, 500 U.S. 478, 494, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991) ). Absolute immunity is not available to prosecutors when they perform " 'investigative' or 'administrative' functions unrelated to judicial proceedings." *Id.* In addition, a prosecutor is not entitled to absolute immunity when he acts as a complaining witness by making sworn statements to the court in support of a criminal complaint. *Kalina v. Fletcher*, 522 U.S. 118, 129-131, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997).

*Hall v. City of Williamsburg*, No. 18-5618, 2019 WL 1470951, at *5–6 (6th Cir. Apr. 1, 2019). Pryor bears the burden of demonstrating that her actions were an "'integral part of the judicial process' or . . . [were] 'intimately associated with the judicial process'" in order to claim absolute immunity. *Wendrow v. Michigan Dep't of Human Servs.*, 534 F. App'x 516, 527 (6th Cir. 2013) (quoting *Koubriti v. Convertino,* 593 F.3d 459, 467 (6th Cir. 2010)).

7

Pryor argues that she is entitled to absolute prosecutorial immunity for all of Walden's claims. Although Walden alleges that Pryor acted as an investigator when she interviewed the alleged victims and witnesses, Pryor retorts that "[e]valuating evidence and witnesses for later proceedings fall squarely in a prosecutor's duties." [R. 4-1 at 8.] However, in his Complaint, Walden alleges that Pryor showed the alleged victim a photo of Walden for identification, possibly suggesting to the alleged victim that Walden was a suspect. [R. 1-1 at 3.] Taking the complaint in a light favorable to Walden, this allegation implies that Pryor was searching for corroboration that might provide probable cause for Walden to be arrested, rather than interviewing a witness for trial. Without further explanation from Pryor, the Court finds that Pryor failed to meet her burden of demonstrating that her actions were an integral part of the judicial process rather than an investigation akin to that performed by a police officer. Thus, Pryor's investigative actions are only entitled to qualified immunity. *See Wendrow*, 534 F. App'x at 527 (quoting *Koubriti,* 593 F.3d at 467) ("By contrast, only qualified immunity is available for prosecutors' actions that are 'investigative or administrative in nature, because they are more removed from the judicial process.'").

In contrast with Pryor's investigatory actions, the Court finds that Pryor is entitled to absolute immunity for presenting the charges to the Christian County Grand Jury. The Sixth Circuit has stated that "absolute immunity is appropriate for claims based on the prosecutor's appearance at a probable cause hearing and before a grand jury." *Spurlock v. Thompson*, 330 F.3d 791, 797 (6th Cir. 2003); *see also Koubriti*, 593 F.3d at 467 ("On the other hand, prosecutors have absolute immunity from 'suits for malicious prosecution and for defamation, and . . . this immunity extend[s] to the knowing use of false testimony before the grand jury and at trial.'"); *Akins v. Reed*, No. 3:17-CV-P18-CRS, 2017 WL 1044697, at *2 (W.D. Ky. Mar. 17,

2017) ("Plaintiff's claim against Defendants regarding allowing false testimony against him in his grand jury proceeding is barred by absolute prosecutorial immunity."); *Faller v. Rogers*, No. CIV. 1:05CV-167M, 2006 WL 314554, at *6 (W.D. Ky. Feb. 8, 2006) ("Prosecutorial immunity extends to a prosecutor's decision on whether to prosecute a case or what evidence to present to a grand jury."). Therefore, the Court finds that Pryor is entitled to absolute immunity for presenting the charges to the Christian County Grand Jury.

### 2. Qualified Immunity

The defense of qualified immunity "shields government officials from 'liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Smoak v. Hall*, 460 F.3d 768, 777 (6th Cir. 2006) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). "In determining whether a law enforcement officer is shielded from civil liability due to qualified immunity, this court typically employs a two-step analysis: '(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established.'" *Id*. (quoting *Estate of Carter v. City of Detroit,* 408 F.3d 305, 310–11 (6th Cir. 2005)). The Sixth Circuit has noted, "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity," because even though "an officer's 'entitlement to qualified immunity is a threshold question to be resolved at the earliest possible point,'" this is typically done at the summary judgment phase "and not [by] dismissal under Rule 12." *Wesley v. Campbell*, 779 F.3d 421, 433-34 (6th Cir. 2015) (quoting *Vakilian v. Shaw*, 335 F.3d 509, 516 (6th Cir. 2003)). Here, the burden is on Walden to show that Pryor is not entitled to qualified immunity. *See Silberstein v. City of Dayton,* 440 F.3d 306, 311 (6th Cir.

2006) ("Once the qualified immunity defense is raised, the burden is on the plaintiff to demonstrate that the officials are not entitled to qualified immunity.").

Pryor asserts that qualified immunity bars Walden's § 1983 claim. [R. 4-1 at 11.] In response, Walden argues that Pryor's conduct "violated clearly established law of which a reasonable prosecutor would have known . . . ." [R. 6-1 at 7.] Specifically, Walden states that "[t]here is a wide variety of constitutional law which makes it impermissible for police officers to undertake an improper photo lineup of one." [*Id.*]

Under the first step of the qualified immunity inquiry, the Court must determine whether "the facts alleged make out a violation of a constitutional right." *Wesley*, 779 F.3d at 428. "If the plaintiff has shown a violation of a constitutional right, then '[t]he second [step] is to ask if the right at issue was "clearly established" when the event occurred such that a reasonable officer would have known that his conduct violated it.'" *Id*. Both of these inquiries must be resolved in Walden's favor for the claim to proceed. *Id*.

First, the Court finds that Walden has not alleged a constitutional violation in the form of malicious prosecution. Although the constitutionally cognizable claim of malicious prosecution under the Fourth Amendment encompasses wrongful investigation, *See Sykes v. Anderson,* 625 F.3d 294, 308 (6th Cir. 2010), Walden completely focuses here on Pryor committing "an improper photo line up of one." [R. 6-1 at 7; *see also* R. 1-1 at 3.] The Sixth Circuit has stated that "an unduly suggestive identification does not, in and of itself, violate constitutional rights." *Gregory v. City of Louisville*, 444 F.3d 725, 747 (6th Cir. 2006) (citing *Manson v. Brathwaite,* 432 U.S. 98, 113 (1977)); *see also Hutsell v. Sayre*, 5 F.3d 996, 1005 (6th Cir. 1993) (holding that the plaintiff was not "challenging a violation of the core right to a fair trial, but merely the purported violation of a prophylactic rule which resulted in the deprivation of his liberty" when

10

he claimed a photographic lineup violated his 14th Amendment rights); *Legenzoff v. Steckel*, No. 2:11-CV-11405, 2013 WL 1278527, at *7 (E.D. Mich. Mar. 27, 2013) ("Nowhere does the court endorse a right to be free from unduly suggestive identification procedures actionable under § 1983 independent of the exclusionary rule."); *Harper v. Bohanan*, No. 3:97-CV-80, 2007 WL 9734415, at *10 (E.D. Tenn. Feb. 8, 2007) ("[E]ven if the photographic lineups were unnecessarily suggestive, the flawed lineups do not violate a constitutionally protected interest sufficient to merit damages under Section 1983."). Thus, on its own, a suggestive photo line-up does not constitute a violation of constitutional rights, and Pryor is entitled to qualified immunity.[2] If Walden wishes to include Pryor's allegedly improper investigation in a claim for malicious prosecution under the 4th Amendment, he must provide further factual allegations besides a suggestive photo line-up.

As dismissal on 12(b)(6) grounds is more appropriate at this early stage in the proceedings than dismissal on qualified immunity grounds, the Court will grant Pryor's motion based on failure to state a claim. As another court within the Western District of Kentucky explained, the question of whether qualified immunity applies "essentially collapses into the standard for whether [plaintiff] has sufficiently plead his claim for relief." *Jackson v. Jernigan*, No. 3:16-CV-00750-JHM, 2017 WL 1962713, at *7 (W.D. Ky May 11, 2017) (citing *Wesley*, 779 F.3d at 427–28). For both enquiries, the Court merely looks to whether Walden has sufficiently stated a claim for a constitutional violation; if he has failed to do that, dismissal is warranted for either failing to state a claim or qualified immunity. *Id*. Therefore, Pryor's Motion to Dismiss for failure to state a claim pursuant to Rule 12(b)(6) as it pertains to Walden's claim of malicious prosecution is GRANTED.

---

[2] As Walden has not shown a violation of a constitutional right, it is not necessary for the Court to undergo the second step of the qualified immunity inquiry. *See Wesley*, 779 F.3d at 428.

### B. State Claims

Walden also asserts four state claims against Pryor in her individual capacity: malicious prosecution, "defamation and libel," tort of outrage, and false imprisonment. The Court will address each claim in turn.

The Sixth Circuit has stated: "Similar to federal law, Kentucky offers both absolute immunity and qualified immunity to prosecutors. Kentucky also uses function as the dividing line, providing absolute immunity for a prosecutor's actions taken as an advocate and only qualified immunity for those taken as an investigator." *Howell v. Sanders*, 668 F.3d 344, 355 (6th Cir. 2012). As Kentucky law looks to federal law in analyzing absolute prosecutorial immunity, the Court finds that Pryor is entitled to absolute immunity for presenting the charges to the Christian County Grand Jury under the analysis recited above.

In contrast, qualified immunity in Kentucky is slightly different in that it requires "a showing of the subjective element of good faith that was rejected under federal law in *Harlow v. Fitzgerald,* 457 U.S. 800, 816–18." *Howell*, 668 F.3d at 355 (citing *Rowan Cnty. v. Sloas,* 201 S.W. 3d 469, 474 (Ky. 2006)). "Kentucky provides qualified immunity from tort liability for public officers and employees for '(1) discretionary acts or functions . . . ; (2) in good faith; and (3) within the scope of the employee's authority.'" *Id*. (quoting *Yanero,* 65 S.W.3d at 522). Pryor argues that "[d]etermining whether to initiate a criminal prosecution and how to present the matter to the Grand Jury are clearly discretionary acts" as they "involve personal deliberation, decisions, and judgment." [R. 4-1 at 9 (citing *Autry v. Western Ky. Univ.*, 219 S.W.3d 713, 717 (Ky. 2007).] Regarding the alleged investigation, Pryor asserts that she "utilized her discretionary authority as the Commonwealth's Attorney to interview and assess the credibility of the individual subject to the Kentucky State Police's investigation," and that "there is an insufficient factual basis to conclude that Pryor's alleged actions fall outside of her role as a prosecutor." [R. 4-1 at 10.]

The Court finds that Pryor has sufficiently pleaded that her behavior amounted to "discretionary acts or functions" at this stage of proceedings. Thus, according to the Supreme Court of Kentucky, "[o]nce the officer or employee has shown *prima facie* that the act was performed within the scope of his/her discretionary authority, the burden shifts to the plaintiff to establish by direct or circumstantial evidence that the discretionary act was not performed in good faith." *Yanero*, 65 S.W.3d at 523. The Western District of Kentucky faced a similar situation to that at hand in *Jackson v. Jernigan*, in which Judge McKinley found that it was inappropriate upon a motion to dismiss pursuant to Rule 12(b)(6) to determine whether the defendant acted in good faith without giving the plaintiff an opportunity to present evidence that supported his pleadings. *Jackson*, No. 3:16-CV-00750-JHM, 2017 WL 1962713, at *8. Similarly, here, upon a 12(b)(6) motion to dismiss, the burden has shifted to Walden to establish by direct or circumstantial evidence that the discretionary act was not performed in good faith. The Court agrees with the findings of its sister court and finds that Walden must be given an opportunity to present evidence that supports his pleadings. Thus, the Court declines to find that Pryor is entitled to qualified immunity at this time on Walden's state law claims

1. **Malicious Prosecution**

Qualified immunity aside, Pryor also argues that Walden's state claim of malicious prosecution should be dismissed for failure to state a claim. [R. 4-1 at 11.] Pryor's entire argument on this issue consists of one sentence: "Plaintiff's Complaint fails to adhere to the requirements set forth in *Iqbal*, as the allegations Pryor maliciously prosecuted him, engaged in 'defamation and libel,' acted in any way to support the tort of outrage, or violated 42 U.S.C. § 1983 are deficient of facts that entitle him to relief, and should be dismissed accordingly." [R. 4-1 at 11.]

13

In Kentucky, under a malicious prosecution claim, the plaintiff must allege: "(i) the institution or continuation of judicial proceedings; (ii) by, or at the instance of, the defendant; (iii) the termination of such proceedings in the plaintiff's favor; (iv) malice; (v) lack of probable cause; and (vi) damages." *Jones v. Clark Cty.*, 2016 WL 4146119, at *9 (E.D. Ky. Aug. 3, 2016) (citing *Raine v. Drasin*, 621 S.W.2d 895, 899 (Ky. 1981) *overruled on other grounds* 690 F. App'x 334 (6th Cir. May 25, 2017)). Here, Walden alleges that Pryor instituted a criminal proceeding against him maliciously and with lack of probable cause, which caused him to suffer damages. [R. 1-1 at 3-7.] Without any specific argument from Pyor, and drawing all reasonable inferences in favor of Walden, the Court finds that Walden stated a claim. Thus, Pryor's Motion to Dismiss as it pertains to the state malicious prosecution claim is DENIED.

2. **False Imprisonment**

Pryor argues that Walden's false imprisonment claim should be dismissed because "it is meritless as to Pryor and falls outside the relevant statute of limitations." [R. 4-1 at 12.] In support, Pryor cites to *Dunn v. Felty*, in which the Supreme Court of Kentucky held that the one-year statute of limitations on a false imprisonment claim accrues at the time the plaintiff is released from the alleged illegal restraint. *Dunn v. Felty*, 226 S.W.3d 68, 72 (Ky. 2007). Here, Pryor does not argue when she believes the false imprisonment claim at issue would have accrued, nor does she give any reason as to why this claim is "meritless." Thus, Pryor's Motion to Dismiss as it pertains to Walden's false imprisonment claim is DENIED.

3. **"Defamation and Libel"**

Pryor asserts that Walden's claim for "the tort of defamation and libel" should be dismissed because "prosecutors are entitled to absolute immunity from defamation actions." [R.

4-1 at 12.] A prima facie case for defamation —whether as an action for libel or for slander[3]—requires proof of "[1] defamatory language [2] about the plaintiff [3] which is published [4] and which causes injury to reputation." *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 793 (Ky. 2004) (citing *Columbia Sussex Corp. v. Hay*, 627 S.W.2d 270, 273 (Ky. Ct. App. 1981)), *overruled on other grounds by Toler v. Sud-Chemie, Inc.*, 458 S.W.3d 276, 287 (Ky. 2014), *as corrected* (Ky. Apr. 7, 2015), *and reh'g denied* (Ky. May 14, 2015); *accord Gahafer v. Ford Motor Co.*, 328 F.3d 859, 861 (6th Cir. 2003). In the Complaint, Walden does not explain what factual allegations qualify as defamation, and he does not specify any defamatory statements made prior to the grand jury proceeding. Thus, the Court assumes he is applying this claim to the factual allegation of Pryor presenting the charges to a grand jury. As explained above, the Court finds that Pryor is entitled to absolute immunity for presenting the charges to the Christian County Grand Jury. Therefore, Pryor's Motion to Dismiss as it pertains to Walden's "defamation and libel" claim is GRANTED.

### 4. Tort of Outrage

Pryor argues that the Court should dismiss Walden's claim for the tort of outrage because Walden "fails to properly state a claim for outrageous conduct or intentional infliction of emotional distress." [R. 4-1 at 12.] Walden responds that Pryor's argument is "without merit and unsupported by law." [R. 6-1 at 9.][4]

Kentucky law recognizes the tort of outrageous conduct, also known as intentional infliction of emotional distress (IIED). *See Craft v. Rice,* 671 S.W.2d 247, 249 (Ky. 1984). The

---

[3] "Libel is the publication of a written, defamatory, and unprivileged statement," *McCall v. Courier-Journal & Louisville Times Co.*, 623 S.W.2d 882, 884 (Ky. 1981), while "slander" involves the same but communicated in "oral" form, *Gahafer v. Ford Motor Co.*, 328 F.3d 859, 861 (6th Cir. 2003).
[4] Both parties cite to the holding of the Kentucky Court of Appeals in *Rigazio v. Archdiocese of Louisville*, 853 S.W. 2d 295, 298 (Ky. App. 1993), but fail to explain how the case is relevant or irrelevant to the matter at hand. [*See* R. 4-1 at 12; R. 6-1 at 9.]

Kentucky Supreme Court has adopted Section 46(1) of the Restatement (Second) of Torts, which provides that "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress . . . ." *Id.* at 251. In recognizing the tort of intentional infliction of emotional distress, the Kentucky Supreme Court adopted a cause of action "for severe emotional distress, caused by truly outrageous behavior, where there was no remedy because the victim did not have an injury directly to his person or intangible personal attributes such as reputation." *Childers v. Geile,* 367 S.W.3d 576, 581 (Ky. 2012).

In rare occasions, an IIED claim can stand alone—but only if the alleged conduct was "intended only to cause extreme emotional distress in the victim." *Brewer v. Hillard,* 15 S.W.3d 1, 8 (Ky. Ct. App. 2000). Generally speaking, it is a "gap-filler tort." *Childers,* 367 S.W.3d at 581. That is, "[w]here the alleged conduct makes out a claim for another tort for which emotional distress damages are available, IIED is not a valid cause of action . . . ." *Farmer v. Dollar Gen. Corp.,* No. 4:11–CV–00027–JHM, 2012 WL 4364108, at *7 (W.D. Ky. Sept.24, 2012). IIED is not a valid cause of action where the alleged conduct makes out a claim for another tort for which emotional distress damages are available. *See Banks v. Fritsch,* 39 S.W.3d 474, 481 (Ky. Ct. App. 2001) (affirming a directed verdict for defendant on intentional infliction claim where plaintiff could theoretically recover emotional damages arising from false imprisonment, assault, or battery). Accordingly, a plaintiff may not plead an intentional infliction of emotional distress claim if another tort also contemplates the emotional damages he seeks. As remaining tort claims contemplate emotional damages and Walden does not allege that Pryor's actions were intended only to cause him extreme emotional distress, Pryor's Motion to Dismiss as it pertains to Walden's tort of outrage claim is GRANTED. *See Carter v. Porter*, 617 F. Supp. 2d 514, 520

(E.D. Ky. 2008) (dismissing plaintiff's IIED claim because his remaining claim of malicious prosecution also contemplated emotional damages).

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED**: Pryor's Motion to Dismiss, [R. 4], is **GRANTED IN PART AND DENIED IN PART**:

1) Pryor's Motion to Dismiss as it pertains to Walden's claims against Pryor in her official capacity is **GRANTED**.
2) The Court finds that Pryor is entitled to absolute prosecutorial immunity for presenting the charges to the Christian County Grand Jury. Thus, Pryor's Motion to Dismiss as it pertains to Walden's Fourth Amendment malicious prosecution claim regarding presenting the charges to the Christian County Grand Jury is **GRANTED**.
3) Pryor's Motion to Dismiss for failure to state a claim pursuant to Rule 12(b)(6) as it pertains to Walden's claim of malicious prosecution regarding Pryor's improper investigation is **GRANTED with leave to amend the complaint**.
4) Pryor's Motion to Dismiss as it pertains to the state malicious prosecution claim is **DENIED**.
5) Pryor's Motion to Dismiss as it pertains to Walden's false imprisonment claim is **DENIED**.
6) Pryor's Motion to Dismiss as it pertains to Walden's "defamation and libel" claim is **GRANTED**.
7) Pryor's Motion to Dismiss as it pertains to Walden's tort of outrage claim is **GRANTED**. **IT IS SO ORDERED**.

*Thomas B. Russell*

**Thomas B. Russell, Senior Judge**
**United States District Court**

June 10, 2019

cc: Counsel of Record