UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:18-CV-171-TBR

**BENJAMIN WALDEN,**                                                     **PLAINTIFF**

v.

**LYNN PRYOR, et al.,**                                                 **DEFENDANTS**

## MEMORANDUM OPINION & ORDER

This matter is before the Court on Defendant Lynn Pryor's Motion in Limine to Exclude Expert Testimony of Larry Rogers ("Motion in Limine"), [DN 59], and Motion for Summary Judgment, [DN 58]. Plaintiff Benjamin Walden filed responses to both motions, [DN 67; DN 68], and Defendant replied, [DN 71; DN 72]. These motions are therefore fully briefed and ripe for review. For the reasons set forth herein, the Court will grant in part and deny in part Defendant's Motion in Limine, [DN 59], and will grant Defendant's Motion for Summary Judgment, [DN 58].

### I.   BACKGROUND

On or about September 23, 2016, Kentucky State Police ("KSP") received information that a female had been taken to Oak Grove, Kentucky—specifically to the Quality Inn—to be "pimped out as a prostitute." [DN 57-6]; *see also* [DN 57-5; DN 57-7]. Officers eventually learned that multiple female victims were involved and interviewed two of those victims, J.G. and R.V. *See, e.g.*, [DN 57-6]. Both women confirmed that they had been sexually assaulted and forcibly employed as prostitutes. *Id.* Specifically, J.G. claimed that she had been paid to engage

in sexual activities with officers employed by the Oak Grove Police Department. *Id.* She stated that one of the officers was "particularly aggressive" and had used his gun to "threaten or intimidated her," and he had forcibly raped and sodomized her. *Id.*

Plaintiff, an officer at the Oak Grove Police Department, was not involved in the investigation but appeared at the hotel on two separate occasions. *Id.* He testified that he noticed the KSP presence in the hotel parking lot on September 23, 2016 and decided to stop and ask the troopers if everything was okay. [DN 57-1, p. 21]. He was told that his assistance was not needed; however, he remained on the scene for approximately forty-five minutes talking to an officer. *Id.* During this time, J.G. saw Plaintiff and identified him as the officer that had raped and sodomized her. [DN 57-6]. Plaintiff eventually left the scene but returned a few hours later to see "what was going on." [DN 57-1, p. 22]. J.G. saw Plaintiff and "immediately began to vomit upon seeing him." [DN 57-6]. Plaintiff was asked to leave the scene. [DN 57-1, p. 22].

During a follow-up interview on September 27, 2016, J.G. stated that Plaintiff had contacted her on September 24, 2016, struck her in the face with his handgun, and threatened to harm her and her family if she spoke with police. *Id.* J.G. also identified Plaintiff through photographs shown to her by KSP. *Id.* J.G. repeated her allegations against Plaintiff when interviewed by F.B.I. agents on September 29, 2016. [DN 57-8].

KSP Trooper Zachary Jones, the lead officer on the case, filed a criminal complaint against Plaintiff on September 27, 2016. [DN 57-2, p. 2]. That evening, Trooper Jones arrested Plaintiff. *Id.* at 5. On or about February 3, 2017, Defendant Pryor, the Christian County Commonwealth Attorney, presented the case to the grand jury. *Id.* at 6–7; [DN 57-3, p. 36]. The grand jury indicted Plaintiff on the following charges: 1st Degree Sodomy; 1st Degree Rape; Assault 4th Degree, Minor Injury; Promoting Prostitution; Official Misconduct, 1st Degree;

2

Terroristic Threatening, 3rd Degree; Intimidating a Participant in a Legal Process; Retaliating Against a Participant in a Legal Process; and Tampering with a Witness. [DN 57-13]. Shortly thereafter, a special prosecutor was appointed at the request of Plaintiff's defense counsel. [DN 57-3, pp. 32–34]. After appointment of the special prosecutor, Defendant Pryor had no further involvement with the criminal case. *Id.* at 72.

In May 2018, the Commonwealth moved to dismiss without prejudice all charges against Plaintiff, stating that it had "recently completed an extensive forensic examination of all known electronic devices associated with the [] case." [DN 57-13]. It explained, that "[t]he absence of forensic evidence which had been anticipated to be supportive of the pending charges will now . . . preclude successful prosecution." *Id.*

On October 28, 2018, Plaintiff sued Defendant Pryor, in her individual and official capacities, in Christian Circuit Court. [DN 1-1]. In his original complaint, he asserted claims of malicious prosecution, "the tort of defamation and libel," and "the tort of outrage," as well as a 42 U.S.C. § 1983 claim. *Id.* at 2. Defendant removed the matter to this Court, [DN 1], and shortly thereafter filed a Motion to Dismiss, [DN 4]. The Court granted the motion in part and dismissed all claims against Defendant in her official capacity, as well as the defamation/libel and outrage claims against Defendant in her individual capacity. [DN 14]. The Court allowed the state law claims for malicious prosecution and false imprisonment to move forward against Defendant in her individual capacity. *Id.*

Plaintiff then filed an Amended Complaint, [DN 18]. To this complaint, Plaintiff added his wife as a plaintiff, and he also added KSP and Trooper Jones as defendants. *Id.* He asserted the following causes of action against Defendant Pryor: false imprisonment, loss of consortium, malicious prosecution, and breach of duty to disclose exculpatory evidence. *Id.* Defendant Pryor

3

moved to dismiss the Amended Complaint, and the Court granted her motion in part, dismissing the false imprisonment, loss of consortium, and breach of duty claims. [DN 27]. However, it allowed a single claim to move forward against Defendant Pryor: the state law malicious prosecution claim against Defendant in her individual capacity. *Id.* The claims against KSP and Trooper Jones were later dismissed, [DN 34], and the only claim remaining at this time is the malicious prosecution claim against Defendant Pryor.

Plaintiff's malicious prosecution claim stems at least in part from Defendant Pryor's interviews with the victims and witnesses in this case. *See* [DN 1-1, p. 3]. In his original complaint, Plaintiff alleged that Defendant Pryor "acted outside the scope of her duties as a Prosecutor and acted as an investigator when she interviewed the alleged victims and witnesses," and the interviews "were conducted in a plainly incompetent manner which included showing the alleged victim the Facebook photo of the Plaintiff for identification." *Id.* He alleged that this act "violated the clearly established professional standard which prohibits the investigator from suggesting that there is a specific suspect and using a single-photo identification." *Id.* Plaintiff did not repeat these allegations in his Amended Complaint, [DN 18], but apparently continues to rely on Defendant Pryor's interview practices to support his malicious prosecution claim. *See* [DN 67].

Defendant Pryor has now filed two motions. In her Motion for Summary Judgment, Defendant argues that she is entitled to prosecutorial immunity and regardless, Plaintiff has failed to produce evidence supporting two essential elements of his claim. [DN 58]. In her Motion in Limine, she asks the Court to exclude the expert testimony of attorney Larry Rogers because his opinion consists of legal conclusions and such expert testimony is improper.

[DN 59]. These motions are now fully briefed and ripe for review. [DN 67; DN 68; DN 71; DN 72].

## II. ANALYSIS

### A. Defendant's Motion in Limine, [DN 59]

In her Motion in Limine, Defendant Pryor asks the Court to exclude the expert testimony of Larry Rogers. In doing so, she quotes Kentucky Rule of Evidence 702, but cites Federal Rule of Evidence 702. [DN 59, p. 3]. Thus, as a threshold matter, the Court must consider whether federal or state evidentiary rules apply.[1] Notably, the plaintiff originally invoked this Court's federal question jurisdiction, but at this time, the only remaining cause of action in this case is a malicious prosecution claim arising under state law. Thus, the Court is exercising its supplemental jurisdiction over the malicious prosecution claim. *See* 28 U.S.C. § 1367. "When deciding matters of supplemental jurisdiction, a federal court must apply the substantive law of the forum state in which it sits." *Diamond Computer Systems, Inc. v. SBC Communications, Inc.*, 424 F.Supp.2d 970, 979 (E.D. Mich. 2006) (citing *Menuskin v. Williams*, 145 F.3d 755, 761 (6th Cir. 1998)). As for procedural rules, like evidentiary rules, the Court applies federal law. *See Super Sulky, Inc. v. U.S. Trotting Ass'n*, 1174 F.3d 733, 741 (6th Cir. 1999) ("A federal court exercising supplemental jurisdiction over state law claims is bound to apply the law of the forum state to the same extent as if it were exercising its diversity jurisdiction." (citation omitted)); *Kotalik v. A.W. Chesterton Company*, 471 F. Supp. 3d 934, 944 (D. N.D. 2020) ("It is well-settled the federal courts apply federal procedural law and state substantive law in the context of pendent jurisdiction over supplemental state law claims." (citations omitted)).

---

[1] Kentucky Rule of Evidence 702 largely mirrors Federal Rule of Evidence 702, as the Editors' Notes to the rule make clear. However, because the parties have cited both the federal and state rule, the Court feels compelled to clarify which rule applies.

5

Thus, in this case, the Court will apply Federal Rule of Evidence 702. That rule states,

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Pursuant to this rule, the Sixth Circuit has outlined three requirements for the admissibility of expert testimony: (1) the expert witness must be qualified by "knowledge, skill, experience, training, or education"; the testimony must be relevant, meaning it "will assist the trier of fact to understand the evidence or to determine a fact in issue"; and (3) the testimony must be reliable. *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008).

Notably, however, an expert witness should not "instruct the jury as to the applicable principles of law." *United States v. Zipkin*, 729 F.2d 384, 387 (6th Cir. 1984) (quoting *Marx & Co., Inc. v. Diner's Club*, 550 F.2d 505, 509–10 (2d Cir. 1977)) (internal quotation marks omitted). As the Sixth Circuit has explained, "It is the function of the trial judge to determine the law of the case, and "[i]t is impermissible to delegate that function to a jury through the submission of testimony on controlling legal principles." *Id.* Thus, an expert may state "opinions that *suggest* the answer to the ultimate issue or that give the jury all the information from *which it can draw inferences* as to the ultimate issue," but the witness cannot "express[] a legal conclusion." *DeMerrell v. City of Cheboygan*, 206 F. App'x 418, 426 (6th Cir. 2006) (quoting *Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994) (emphasis added)) (internal quotation marks omitted). Examples of such improper legal conclusions include expert testimony that an officer's shooting of the plaintiff was objectively unreasonable; a reasonable officer

would not have concluded that probable cause existed; and the use of deadly force by an officer was improper and unnecessary. *Id.* (citations omitted).

In the present case, Defendant argues that the proposed expert opinions of Larry Rogers "are merely legal conclusions that are reserved for the Court." [DN 59, p. 4]. Mr. Rogers lists three opinions in his expert report. First, he opines that "the showing of photographs of the Plaintiff Ben Walden by the Defendant Lynn Pryor to the alleged victim, as set forth in the materials provided to me, fall outside the normal function of a prosecutor and is the conduct of an investigator/police officer." [DN 57-14]. Next, he opines, "It is my opinion there is clear factual evidence in the record to conclude that the Defendant, Lynn Pryor acted outside of her role as a prosecutor and that of an investigator in this proceeding." *Id.* As for his third opinion, Mr. Rogers states, "It is my opinion, Defendant, Lynn Pryor inexplicably assumed the role of an investigator in the very infancy of this case despite the fact the case was being investigated by no less than three Kentucky State Police Officers." *Id.* He further states, "In doing so, it is my opinion, she lost her grant of prosecutorial absolute immunity from a claim of malicious prosecution." *Id.* It is not clear how any of these three opinions differ, as each appears to be an opinion that Defendant acted as an investigator when showing photographs to the alleged victims, thereby divesting herself of prosecutorial immunity.

In addition to this opinion about prosecutorial immunity, Mr. Rogers also states that "one could conclude the Defendant, Lynn Pryor participated in a rush to charge the Plaintiff, Ben Walden with horrific crimes based entirely on uncorroborated statements by the alleged victim who had lied in the past about being physically assaulted." *Id.* Mr. Rogers then opines that "[t]hese actions, in my opinion, create triable issues of fact as to whether Plaintiff, Lynn Pryor had a malicious motive (malice) in her prosecution of the Plaintiff, Ben Walden and whether

7

there was want of probable cause for the criminal proceeding against the Plaintiff." *Id.* Ultimately, Mr. Rogers summarizes his report as follows: "[A] triable issue of fact exists as to the element of malice because it seems the lack of probable cause reverberates from Pryor's playing investigator at the beginning of the case until the circumspect plea bargain deals to manufacture evidence against the Plaintiff, Ben Walden and thus infers malice." *Id.*

The Court therefore understands that Mr. Rogers actually presents two "expert opinions": (1) Defendant divested herself of prosecutorial immunity by acting as an investigator and (2) one can infer a lack of probable cause, and thereby infer malice, from Defendant's actions as an investigator. The Court agrees that these opinions constitute improper legal conclusions, at least in part. To the extent Mr. Rogers opines that specific actions of Defendant Pryor are more akin to that of an investigator, rather than a prosecutor, the Court will allow Mr. Rogers to provide such testimony. The Court finds that such testimony only "suggests[s] the answer to the ultimate issue" or provides information from which the factfinder "can draw inferences as to the ultimate issue." *Berry*, 25 F.3d at 1353. However, Mr. Rogers may not go beyond that opinion to state that Defendant lost prosecutorial immunity, lacked probable cause, or acted with malice. These are improper legal conclusions. *See generally Adams v. Hanson*, 656 F.3d 397, 401 (6th Cir. 2011) ("Whether a defendant is entitled to absolute or qualified immunity from liability . . . is a legal question.").

### B. Defendant's Motion for Summary Judgment, [DN 58]

#### 1. Legal Standard

To grant a motion for summary judgment, the Court must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party "bears the initial responsibility of informing the

district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

In reviewing a motion for summary judgment, the Court must review the evidence in the light most favorable to the non-moving party; however, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-moving party must present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

Ultimately, if the record, taken as a whole, could not lead the trier of fact to find for the nonmoving party, then there is no genuine issue of material fact and summary judgment is appropriate. *Matsushita Elec.*, 475 U.S. at 587 (citation omitted).

### 2. Essential Elements of a Malicious Prosecution Claim

Under Kentucky law,[2] a plaintiff must prove the following elements to succeed on a malicious prosecution claim:

---

[2] As explained above, the Court is exercising supplemental jurisdiction and therefore applies the substantive law of the forum state, Kentucky.

9

> 1) the defendant initiated, continued, or procured a criminal or civil judicial proceeding, or an administrative disciplinary proceeding against the plaintiff;
> 2) the defendant acted without probable cause;
> 3) the defendant acted with malice, which, in the criminal context, means seeking to achieve a purpose other than bringing an offender to justice; . . .
> 4) the proceeding. . . terminated in favor of the person against whom it was brought; and
> 5) the plaintiff suffered damages as a result of the proceeding.

*Seiller Waterman, LLC v. RLB Properties, Ltd.*, 610 S.W.3d 188, 196 (Ky. 2020) (quoting *Martin v. O'Daniel*, 507 S.W.3d 1, 7 (Ky. 2016)). As the Supreme Court of Kentucky has explained, "The law generally disfavors the tort of malicious prosecution because 'all persons [should] be able to freely resort to the courts for redress of a wrong[.]'" *Garcia v. Whitaker*, 400 S.W.3d 270, 274 (Ky. 2013) (citing *Raine v. Drasin*, 621 S.W.2d 895, 899 (Ky. 1981), *abrogated on other grounds by Martin*, 507 S.W.3d at 6–12). Further, "public policy favors the exposure of crime." *Puckett v. Clark*, 410 S.W.2d 154, 157 (Ky. 1966); *see also Broaddus v. Campbell*, 911 S.W.2d 281, 285 (Ky. App. 1995) ("[A]ctions for malicious prosecution have traditionally been disfavored due to the chilling effect on those considering reporting a crime." (citation omitted)). Thus, "claimants alleging malicious prosecution must strictly comply with each element of the tort." *Garcia*, 400 S.W.3d at 274 (citing *Raine*, 621 S.W.2d at 899).

In her Motion for Summary Judgment, [DN 58], Defendant first argues that she is entitled to absolute prosecutorial immunity for her actions taken during the victim interviews, namely, the presentation of photographs to the alleged victims. Defendant next argues that she is entitled to summary judgment because Plaintiff has failed to provide any evidence to support two essential elements of a malicious prosecution claim: (1) lack of probable cause and (2) malice. Because the Court agrees that Plaintiff has failed to create a genuine dispute of material fact with respect to these two essential elements, the Court need not address Defendant's immunity arguments. *See generally Louisville & N.R. Co. v. Sharp*, 140 S.W.3d 383, 385 (1940) ("To

maintain an action for malicious prosecution, both want of probable cause for the prosecution and malice on the part of the prosecutor must be affirmatively shown and probable cause is a complete defense." (citations omitted)).

### a. Lack of Probable Cause

The Court first considers Defendant's argument that Plaintiff has failed to provide any evidence that she lacked probable cause. In the context of a malicious prosecution claim, the Supreme Court of Kentucky has defined "probable cause" as "that which 'would induce a man of ordinary prudence to believe that the person prosecuted had committed the crime charged.'" *Garcia*, 400 S.W.3d at 274 (quoting *Sharp*, 140 S.W.3d at 385). "[M]ere conjectures and suspicions" will not suffice; however, "credible information received from others might well be enough to induce" a criminal proceeding. *Estate of Leavell v. Wal-Mart Stores East, Limited Partnership*, 5:18-CV-00073-GNS, 2020 WL 59829, *4 (quoting *Jones v. Ernspiker*, No. 2008-CA-001316-MR, 2010 WL 1404420, at *1 (Ky. App. Apr. 9, 2010)). Overall, probable cause "is a relatively low standard based on 'the practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Commonwealth v. Bennett*, 553 S.W.3d 268, 271 (Ky. App. 2018) (quoting *Illinois v. Gates*, 462 U.S. 213, 241 (1983)).

Ultimately, the plaintiff in a malicious prosecution case bears the burden of establishing that the defendant—here, the prosecutor—acted without probable cause in initiating the criminal proceedings against the plaintiff. *Collins v. Williams*, 10 S.W.3d 493, 496 (Ky. App. 1999). To satisfy this burden, he must make a "clear showing that no probable cause for the prosecution existed." *Puckett*, 410 S.W.2d at 157. It is "a question of law for the court as to what facts constitute probable cause." *Sharp*, 140 S.W.3d at 384 (citations omitted).

In this case, the alleged victim identified Plaintiff twice at the scene and later from a photo line-up conducted by state police. She confirmed her story and her identification of Plaintiff during an interview with the FBI. A few months later, on February 3, 2017, Defendant presented the case to a grand jury, who returned a nine-count indictment against Plaintiff. A special prosecutor was then appointed and after over a year of continued investigation, the charges against Plaintiff were ultimately dropped. The May 11, 2018 dismissal order explains that the Commonwealth "considered the following": that the Quality Inn's security footage did not show any images of Plaintiff; none of the cell phones connected to the prostitution ring showed any connection to Plaintiff; the alleged victim previously made a false report of physical assault while living in Wyoming; the alleged victim accused Plaintiff of setting up a meeting with her, but there was no evidence of those electronic communications; the alleged victim had previously filed multiple false reports, "raising substantial questions regarding her credibility"; and Plaintiff's DNA was not found on any of the rape kit samples taken from the alleged victim. [DN 67-1].

Under Kentucky law, the fact that the grand jury returned an indictment against Plaintiff creates a rebuttable presumption of probable cause. *See Tucker v. Heaton*, No. 5:14–CV–00183–TBR, 2015 WL 3935883, *10 (W.D. Ky. June 26, 2015) (citing *Davidson v. Castner–Knott Dry Goods Co., Inc.*, 202 S.W.3d 597, 607 (Ky. App. 2006)). To succeed on his malicious prosecution claim, Plaintiff must rebut that presumption. *See Karsner v. Hardin County*, No. 3:20-CV-125-RGJ, 2021 WL 886233, *10 (W.D. Ky. Mar. 9, 2021) (citing *Davidson*, 202 S.W.3d at 607).

The Court finds that Plaintiff has failed to rebut the presumption of probable cause in this case. Even ignoring the alleged victim's identification of Plaintiff when interviewed by

12

Defendant, Defendant possessed probable cause based on the victim's prior identifications of Plaintiff at the scene (on two separate occasions, both of which were unsolicited and one of which caused an involuntary physical reaction in the victim), during a photo line-up conducted by state police, and during an interview with the FBI. *See generally Legenzoff v. Steckel*, 564 F. App'x 136, 142 (6th Cir. 2014) ("In assessing probable cause, this Court has held that an eye witness identification and accusation, by itself, is sufficient to establish probable cause."); *Ahlers v. Schebil*, 188 F.3d 365, 371 (6th Cir. 1999) (explaining that an eyewitness statement "provided Defendants with ample probable cause"). Plaintiff does not dispute these facts, but instead argues that the alleged victim was not a credible witness. It is true that "proof that the information [that lead to the indictment] came from an unreliable source would be important in showing that the information was such that a reasonable man would not act on it." *Estate of Leavell*, 2020 WL 59829, *4 (quoting *Jones*, 2010 WL 1404420, *1). However, in this case, there is no evidence that the prosecutor or investigators were aware of the alleged victim's prior false reports at the time of the indictment. *See Ahlers v. Schebil*, 188 F.3d 365, 371 (6th Cir. 1999) ("It appears, then, that in order to sustain their claim that there are genuine issues of fact regarding the existence of probable cause, Plaintiffs would have to allege that the Defendants had reason to think that [the] eyewitness identification was in some way untruthful or unreliable."). Based on the evidence of record, none of the information available to Defendant at the time of the indictment "was such that a reasonable man" would decline to act on the victim's repeated and consistent identifications of Plaintiff.

Further, once probable cause was established, the prosecutor and investigators were under no obligation "to investigate further or to look for additional evidence which may exculpate the accused." *Id.* (citations omitted). Nor was the prosecutor obligated to wait—nearly

13

a year—for the forensic examination of the cellphones and other devices to conclude before presenting the case to a grand jury. *Id.* (citations omitted). That is not to say that probable cause cannot be called into question by evidence of an incomplete or poorly conducted investigation. In some cases, there may be evidence of incompetent investigatory work, or evidence that the prosecutor ignored exculpatory evidence or failed to present such evidence to the grand jury. *Id.* at 371–72 (citations omitted). However, there is no such evidence in this case. Instead, the victim's consistent and repeated identifications of Plaintiff were sufficient to provide probable cause. Though the victim's credibility was called into question nearly a year after the indictment was returned against Plaintiff, that alone does not "transform this case into one based on 'mere conjectures and suspicions.'" *Estate of Leavell*, 2020 WL 59829, \*4 (quoting *Jones*, 2010 WL 1404420, \*1).

The Court therefore finds that, based on the information available to her, Defendant possessed the probable cause necessary to initiate the grand jury proceedings, as evidence by the indictment returned against Plaintiff. Plaintiff has failed to identify any evidence of record sufficient to rebut the presumption of probable cause created by the indictment or to create a genuine factual dispute with respect to the element of probable cause. As noted above, Plaintiff bears the burden of proving each element of his malicious prosecution claim, and his failure to prove this essential element is fatal to his case. *See Farris v. Sears, Roebuck & Co.*, 455 F.Supp. 162, 164 (W.D. Ky. 1978) ("The absence of probable cause is an essential element in malicious prosecution suits." (citation omitted)). The Court must therefore grant summary judgment in favor of Defendant.

### b. Malice

Even though the existence of probable cause is fatal to Plaintiff's case, the Court will also consider Defendant's argument that Plaintiff has failed to provide any evidence of malice. As

noted above, in the context of a criminal prosecution, malice "means seeking to achieve a purpose other than bringing an offender to justice." *Seiller Waterman*, 610 S.W.3d at 196. The Supreme Court of Kentucky has also similarly defined malice as "the intentional doing of a wrongful act to the injury of another, with an evil or unlawful motive or purpose." *Hartman v. Thompson*, NO. 3:16-CV-00114-GNS-DW, 2018 WL 793440, *16 (W.D. Ky. Feb. 7, 2018) (quoting *Sawyers v. Drummond*, No. 1:14-CV00111-GNS-HBB, 2017 WL 217752, at *8 (W.D. Ky. Jan. 18, 2017)) (internal quotation marks omitted). "The malice element may be active, hostile, and demonstrable, or it 'can be inferred from lack of probable cause.'" *Id.* (quoting *Sweeney v. Howard*, 447 S.W.2d 865, 866 (Ky. 1969)); *see also Farris*, 455 F.Supp. at 164 (explaining that malice "may be inferred only from proof or want of probable cause").

  As already explained, Defendant possessed the requisite probable cause, so malice cannot be demonstrated by a lack of probable cause. Instead, Plaintiff argues that "[t]he reasons that probable cause did not exist in this criminal case are all functional indica (sic) of malice on the part of Ms. Pryor against Mr. Walden." *Id.* More specifically, Plaintiff argues that "[c]hoosing prosecution (sic) solely on the basis of a single witness's uncorroborated testimony despite major credibility issues with said witness, could certainly be valid evidence of malice," as could "[c]hoosing to prosecute before seeking any type of data to objectively link Mr. Walden to the alleged crime." *Id.* Then, without citing to any evidence whatsoever, Plaintiff poses the question, "Was Defendant Pryor seeking publicity and/or public acclaim prior to the upcoming election for busting 'those bad Oak Grove cops?'" *Id.* Relying on this question, Plaintiff argues that "[t]he jury should be allowed to decide whether there was malice." *Id.* In essence, then, Plaintiff argues that Defendant Pryor initiated criminal charges against him for political gain, rather than to bring an offender to justice.

The Court finds these arguments to be unavailing. There is no evidence—nor does Plaintiff cite to any—to support his bold claim that Defendant Pryor was seeking publicity or political support prior to an upcoming election. In fact, in Defendant's deposition, she does not make a single reference to an election, other than the 2006 general election in which she was first elected as Commonwealth Attorney. *See* [DN 57-3, p. 8]. Further, though Plaintiff quotes the phrase "those bad Oak Grove cops," that phrase was never mentioned in Defendant's deposition (or in any other deposition in the record, or anywhere else in the record). Instead, Plaintiff's assertion (or rather, suggestion) that Defendant may have been seeking publicity or political gain is pure speculation, completely unsupported by the record. Such rampant speculation is highly inappropriate and is insufficient to demonstrate a genuine dispute of material fact. *See Bradley v. Wal-Mart Stores East, LP*, 587 F. App'x 863, 866 (6th Cir. 2014) ("A properly supported motion for summary judgment will not be defeated by conclusory allegations, speculation and unsubstantiated assertions." (citation omitted)). Instead, to survive this summary judgment motion, Plaintiff was required to "come forth with evidence from which a jury can reasonably find in his . . . favor." *Id.* However, "Plaintiff[] [has] not cited any evidence in the record tending to show Defendant[] [was] actively, hostilely, or demonstrably malicious in" initiating criminal charges against Plaintiff. *Hartman*, 2018 WL 793440, at *16. As the Court has already determined the existence of probable cause, it also finds that Plaintiff failed to present proof of malice.

In sum, Plaintiff has failed to point to any evidence in the record that demonstrates a lack of probable cause or malice in initiating the prosecution against him. He has therefore failed to demonstrate a genuine dispute of fact with respect to two essential elements of his claim. Accordingly, the Court will grant summary judgment on behalf of Defendant.

### III.  CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that Defendant Lynn Pryor's Motion in Limine, [**DN 59**], is **GRANTED IN PART** and **DENIED IN PART**. Said motion is **GRANTED** to the extent Defendant seeks to exclude the expert witness's improper legal conclusions and is **DENIED** to the extent Defendant seeks to exclude the expert witness's opinions as to whether she was acting as an investigator, as explained in detail above.

**IT IS FURTHER ORDERED** that Defendant Lynn Pryor's Motion for Summary Judgment, [**DN 58**], is **GRANTED**. A separate judgment shall follow.

Thomas B. Russell, Senior Judge
United States District Court

March 10, 2022

cc: Counsel of Record